Burr *v.* Adam Eidemiller, Inc., Appellant.

Argued October 2, 1956.   Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

J. *Campbell Brandon,* with him *Hugh S. Millar* and *Brandon, Millar & Rockenstein,* for appellant.

*Willis A. MacDonald,* with him *A. R. Cingolani,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, November 12, 1956:

Plaintiffs, husband and wife, brought this action in trespass against the defendant, a road construction company, to recover damages arising out of the subterranean contamination of their water supply. The jury rendered a verdict for the plaintiffs in the sum of $16,-000. The defendant filed motions for judgment non obstante veredicto and for new trial which were dismissed and judgment entered on the verdict. The defendant appeals therefrom.

In passing on defendant's motion for judgment n.o.v. we must review the evidence and consider all the facts and reasonable inferences to be drawn therefrom in a light most favorable to plaintiffs' cause: *Nixon v. Chiarilli,* 385 Pa. 218, 122 A. 2d 710. The plaintiffs had been the owners of a 15-acre tract of land fronting upon Connoquenessing Creek in Forward Township, Butler County, for some 16 years upon which had been erected their dwelling, a 2-story brick building, a 2-car frame garage, four 5-room cottages fronting upon the Creek, an artificial lake stocked with fish, and a picnic ground. The place was known as "Wonderland Park" and was used for public gatherings upon a rental basis and the cottages were rented at an annual rental. The home, cottages, picnic area and artificial lake with fountain had been served by a pure and abundant spring as the

sole source of water supply. The spring had been in existence for over 50 years.

In 1954 State Highway Route No. 68 was relocated and the M. & S. Construction Company received the general contract for the improvement of the highway. The paving contract was sublet to Adam Eidemiller, Inc., defendant and appellant herein. In August of 1954 the defendant, for the purpose of mixing materials necessary to pave the surface of the highway, occupied by lease a tract of land known as the Fisher property which adjoined the real estate of the plaintiffs, separated by a public secondary road known as Ash Road. The Fisher land was upgrade from the plaintiffs' land. In the process of preparing the Fisher land for its operations thereon, the defendant company removed the top soil and clay and drilled some 50 post holes through the sandstone to a depth of 3 to 3½ feet for the purpose of placing poles therein to support the sides of storage bins. A ramp was constructed and heavy machinery installed in order to transfer the materials for the roadway to trucks which carried the materials to the place where the road was being constructed. Large quantities of slag from steel mills 30 miles away were hauled and placed in the bins, and underwent a leaching or wetting down process before it was used in the concrete mix. 5,000 to 10,000 gallons of polluted water from Connoquenessing Creek were daily poured over this slag in a continuous spray.

This leaching process commenced on September 1, 1954, and three days later the plaintiffs' spring became contaminated. This contamination was traced to the run-off water from the slag pile, particularly by the use of a dye test. The water in the spring became contaminated chemically in that sulphate was created and an erosive acid condition which caused the entire heat-

ing and plumbing system and fixtures on the plaintiffs' premises to become ruined. The spring was also contaminated bacteriologically, and was condemned by the State authorities for use in human consumption. The fish in the artificial lake were destroyed.

The defendant company was notified on September 3rd of the condition of the spring and shortly after was advised as to the character of the contamination. Nothing was done to alleviate the condition, and the defendant carried on the leaching process until November 13, 1954, at which time its contract for the paving of the State highway was finished.

The plaintiffs introduced evidence by a chemist to the effect that the acid condition of the water was the cause of the destruction of the heating and plumbing system owned by the plaintiffs, as well as the loss of the use of their sewage system. While the defendant offered evidence to the contrary, this was an issue of fact for the jury to determine which was resolved in the plaintiffs' favor.

In the recent case of *Waschak v. Moffat,* 379 Pa. 441, 109 A. 2d 310, we adopted the rule of the Restatement of Torts with respect to an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land. At p. 448 we said: "The Rule of the Restatement, which unquestionably is accurate and most comprehensive, is as follows: 'Section 822. GENERAL RULE. The actor is liable in an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land if, (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is legal cause of the invasion; and (d) the invasion is either (i) intentional and un-

reasonable; or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct.' This rule we adopt. We agree that the adoption will obviate the difficulty and confusion in attempting to reconcile or distinguish the great mass of cases. We are not violating precedent and are not conflicting, in major degree, with the principles of *stare decisis.*".

The plaintiffs based their claim on Clause (d), Subclause (i) of §822 of the Restatement above quoted, and it was not necessary for them to prove, as urged by the appellant, that its conduct was negligent, reckless or hazardous. Such proof is required only where the invasion is unintentional. The court properly instructed the jury that liability could be imposed upon the defendant if they found by the fair weight and preponderance of the evidence that there was an invasion by the defendant of the plaintiffs' rights and also found that the invasion was intentional and unreasonable.

Appellant's contentions are (a) that the evidence did not justify a finding of intentional misconduct on its part; (b) that even if its conduct were deemed intentional, it was not unreasonable under the circumstances, and (c) that defendant's operation was not the only damaging factor, that the water could have been polluted or contaminated by other causes and that the verdict was therefore purely conjectural. Considering the last contention first, defendant argues that the contamination could have resulted from old abandoned oil wells in the community, or by seepage and sewage of the cesspools of neighbors or by a change of subterranean stratum caused by blasting of the M. & S. Construction Company. The dye test which traced the water from the defendant's leaching process to the plaintiffs' spring established that water from defend-

ant's operation unquestionably entered the spring. There was no evidence—and no tests were made—that water escaped from the old oil wells or cesspools and entered the spring. Against this conjectural possibility was the fact that no pollution of the spring occurred until defendant's operation. As to the suggestion that a change of subterranean stratum was caused by the blasting of the M. & S. Construction Company, this blasting had been carried on six months before the operation of the defendant company and the spring had remained pure. It had supplied all the drinking water for the employes of the construction company, local highway officials and employes of the defendant company up until the leaching process was commenced.

Turning to defendant's other contentions upon which reliance is principally placed, we think the evidence fully justified a finding that defendant's conduct was intentional. Section 825 of the Restatement divides intentional invasion into two classes: (a) where the actor acts for the purpose of causing it; or (b) where the actor knows that it is resulting or is substantially certain to result from his conduct. In Illustration 4 of the Comment following §825 of the Restatement it is stated: "Same facts as in Illustration 3 except that after learning of the pollution of B's well, A continues to dump waste into the same depression which causes further pollution of the well and more interference with B's poultry business. These further invasions of B's interest in the use and enjoyment of his land are intentional.". The defendant company knew in three days after starting its operations that the plaintiffs' spring was polluted and then or shortly thereafter knew that the pollution was coming from the slag pile. Nevertheless the defendant company continued its operations unabated. The jury was instruct-

ed that no intentional invasion of any rights of the plaintiffs could arise until the defendant knew of the contamination of the spring, and proceeded to conduct the leaching process with no attempt to correct it.

As to appellant's contention that even if its conduct be deemed intentional, the use was not unreasonable, we think the court properly left the reasonableness of the use to the jury. There was testimony adduced by appellant that it would cost the estimated sum of $25,000 to move its "batch plant", as its operation was termed, to another location on its leased land, and that such removal would take three weeks, seriously interfering with the performance of the company's paving contract. On the other hand Eidemiller, defendant's vice-president, who was familiar with the operation of the batch plant and the surrounding territory, and was frequently at the job, admitted that the run-off water from the slag could have been prevented from percolating or filtrating into the soil and thence to the plaintiffs' land by placing corrugated iron sheets underneath its bins and carrying the run-off downhill beyond the point where it could reach the plaintiffs' spring. In its comprehensive treatment of non-trespassory invasion of another's interest in the private use and enjoyment of land, the Restatement considers the utility of a defendant's conduct as opposed to the gravity of the harm, and in Clause (c) (g) of the Comment on §828 states: "When a person knows that his conduct will interfere with another's use or enjoyment of land, and it would be practicable for him to prevent or avoid part or all of the interference and still achieve his purpose, his conduct lacks utility if he fails to take the necessary measures to avoid it. . . .". *Catherine Pfeiffer v. J. L. Brown et al.*, 165 Pa. 267, 30 A. 844, cited by appellant, is in accord with the

principles laid down by the Restatement. There it was held that where a landowner, by drilling an oil well and pumping, increases the aggregate quantity of water discharged, concentrates it at an artificial point of flow, and changes its character from fresh to salt, thereby injuring the lands of an adjoining owner, he is liable for the injury, if he could have avoided inflicting it by reasonable care and expenditure.

There is another factor bearing upon the reasonableness of the defendant's conduct in the instant case. The area here involved was residential rural and the particular activity of the defendant was neither suited to the character of the locality nor was it a natural use of the land as in the development of property for taking out oil, coal or some other mineral. Referring again to the Restatement, the Comment on §828(b) states: ". . . Where the particular activity or inactivity is not suited to the character of the locality, the conduct generally lacks utility and the invasion it causes is generally unreasonable as a matter of law if the harm involved is at all serious . . . An intentional interference with a use or enjoyment of land which is well suited to the character of the locality cannot ordinarily be justified as reasonable when the conduct which causes it is unsuited to that locality.".

The court below in an extended charge thoroughly covered the subject of reasonableness and under the evidence correctly charged the jury that ". . . in passing upon the reasonableness, the question is whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable. And regard must be had for the interest of both parties, that is, both plaintiff and defendant, in determining that.". Despite the argument of appellant's able counsel, we are satisfied that the court

below properly denied the defendant's motion for judgment n.o.v.

In dismissing the appellant's motion for new trial the court below stated that there were assigned as reasons therefor that the verdict was against the law, the evidence, the weight of the evidence, and that the same was excessive. The motion for new trial, as appears in the record, assigns only the first three customary reasons which we agree with the court below were without merit. Neither in his brief nor oral argument did appellant press for a new trial. However, our foregoing discussion disposes of the contentions that the verdict was against the law, the evidence or the weight of the evidence. As to excessiveness of the verdict, if that was considered by the court below, it was not included in appellant's statement of questions involved. In any event, we have carefully reviewed the record with respect to the damages sustained by the plaintiffs and are not persuaded that the verdict was excessive.

Judgment affirmed.