Robert McQUILKEN and Jean McQuilken, et al., Plaintiffs,

v.

A & R DEVELOPMENT CORP., et al., Defendants,

v.

AMBRIC TESTING AND ENGINEERING ASSOCIATES, INC., et al., Third Party Defendants.

Civ. A. No. 81–419.

United States District Court, E.D. Pennsylvania.

Dec. 5, 1983.

---

Joseph M. Gindhart, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for plaintiffs.

Theodore H. Lunine, Bennett, Bricklin, Saltzburg & Fullem, Philadelphia, Pa., for A & R Development/The Waterford Group.

Austin Hogan, White & Williams, Philadelphia, Pa., for Jolly Co., Inc. d/b/a The Whitman General Contracting Co.

Thomas L. Kelly, Kelly, Haase & Dunn, Media, Pa., for Redevelopment Authority of the City of Philadelphia.

Arthur W. Lefco, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for Philadelphia Housing Authority.

Joseph Goldberg, Margolis, Edelstein & Scherlis, Philadelphia, Pa., for Ambric Testing & Engineering Associates—Leet Associates.

Edwin F. McCoy, LaBrum & Doak, Philadelphia, Pa., for Sylvester Thompson & Sons, Inc.

Walter S. Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for U.S. Dept. of Housing & Urban Development.

John T. Thorn, Detweiler, Hughes & Kokonos, Philadelphia, Pa., for Skarda & Richert Structural Consultants, Inc.

Thomas R. Harrington, Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for L.B. Foster Co.

Bruce D. Lombardo, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for Menefee Associates.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiffs in this case, Robert and Jean McQuilken and Joseph Crowley, seek to recover for damages to their property caused by construction activity on the Whitman Park site. They also seek to represent a class consisting of "all persons residing in and/or owners of homes located on the East side of the 2500 and 2600 blocks of South 2nd Street, and on the North side of the 100 block of Porter Street, all in Philadelphia, Pennsylvania." Before the court are the motions of defendants, United States Department of Housing and Urban Development (HUD), the City of Philadelphia, (City), and the Redevelopment Authority of the City of Philadelphia (RDA), to dismiss the complaint as to them, the plaintiff's motion .for certification of the class, the motion of the Philadelphia Housing Authority (PHA) for summary judgment, and various discovery motions. Because this case has a relatively complex procedural history and is related to another complex case, *Resident Advisory Board v. Rizzo*, No. 71–1575, a brief discussion of its current posture is necessary before proceeding to a discussion of the various motions.

This suit was filed in the Court of Common Pleas of Philadelphia County and removed to this Court two days later. As filed, the suit sought injunctive relief and damages against three defendants, A & R Development Corp. (A & R), Jolly Company, Inc. (Jolly), and the Philadelphia Housing Authority (PHA). The plaintiffs claim that A & R and Jolly, pursuant to a contract with the PHA, have engaged in pile-driving, earth-moving, concrete pouring and machinery moving activities which have "caused conditions to occur in the

homes of the individual plaintiffs including cracked walls, ceilings and pipes." The complaint also alleges that the defendants "willfully and knowing that their activities caused such conditions, continued and will continue same." The suit sought damages for the injury to property and sought to enjoin further construction activity.

Following removal, the case was assigned to this Court as related to *Resident Advisory Board v. Rizzo.* In *RAB v. Rizzo,* this Court ordered the PHA, the RDA, the City, and HUD to proceed immediately with all necessary steps for the construction of one hundred twenty townhouses at Whitman Park. 425 F.Supp. 987 (E.D.Pa. 1976), *aff'd as modified,* 564 F.2d 126 (3d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978). The construction activity which the plaintiffs sought to enjoin was that mandated by this Court's Order in *RAB v. Rizzo.* The Court held that the removal of the case was proper pursuant to 28 U.S.C. § 1443(2) as a suit arising out of acts performed "under color of authority derived from any law providing for equal rights," and pursuant to 28 U.S.C. § 1441(b) since the real nature of the claim, which sought to enjoin construction ordered by this Court, was federal. *McQuilken v. A & R Development Corp.,* 510 F.Supp. 797 (E.D.Pa.1981). The Court thereafter ordered the City, the RDA, and HUD added as defendants, since the suit sought to enjoin construction activity which they had been ordered to perform.

Following its decision that removal of this action was proper, the Court began a hearing on the plaintiffs' motion for injunctive relief. In the course of this hearing, the plaintiffs announced in open court that they were withdrawing their request for an injunction and left the courtroom. The Court *sua sponte* entered Orders limiting construction activity which might produce vibration levels possibly endangering the people in the area or the properties surrounding the construction site. Orders of April 10, 1981 and September 25, 1981. Construction of the Whitman Park townhouses has been completed, and the homes are now occupied.

Numerous third parties have been brought into this action by A & R and Jolly. A & R has impleaded Ambric Testing and Engineering Associates and its subsidiary, Leet Associates (Ambric-Leet), and Sylvester Thompson and Sons (Thompson). Jolly has impleaded Ambric-Leet and Thompson, as well as Menefee Associates (Menefee), Skarda*Rickert Structural Consultants, Inc. (Skarda*Rickert), and L.B. Foster Co. (Foster). With perhaps a few exceptions, it appears that at this point in the litigation all of the defendants and third-party defendants have filed counterclaims or cross-claims against each other. In summary, the third-party claims include claims that Jolly, A & R and Ambric-Leet negligently supervised the pile-driving, that Jolly and A & R negligently supervised other contractors, that Menefee and Ambric-Leet were negligent with respect to soil work, that Skarda*Rickert negligently performed engineering work, that Foster was negligent and/or breached its warranty in supplying the pile-driving equipment, and that Thompson was negligent in performing the pile-driving. PHA has alleged in a cross-claim that Thompson should be held strictly liable for the pile-driving activity on the ground that pile-driving is an abnormally dangerous activity under Pennsylvania law.

*Motions of the City, the RDA and HUD to Dismiss.*

The City and the RDA have filed motions to dismiss the complaint as to them. They state that they were added as parties only because their presence was necessary to the granting of any injunctive relief and that, since only a damages claim remains in this action, there is no reason for their continued presence here. The motions of the City and the RDA to dismiss are unopposed, and at a hearing on the motions the plaintiffs and the other parties present stated that they had no objection to the dismissal of the City and the RDA from the case. An Order will, therefore, be entered granting the motions of the City and the RDA and dismissing them from this action.

HUD has also moved to dismiss the complaint stating, among other grounds, that this Court lacks jurisdiction over the plaintiffs' damages claim against it because no written notification of the claim with a demand for payment was first presented to the agency itself. The plaintiffs have not objected to this motion. As a sovereign, the United States is immune from suit except as it consents to be sued, and the terms of that consent define the Court's jurisdiction. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The United States has consented to be sued for damages with respect to a number of tortious activities, but only if the requirements of the Federal Tort Claims Act, 28 U.S.C. §§ 2671; *et seq.,* are met. Under the Act, a claim may not be maintained in a federal Court unless the claimant first presents the claim to the agency being sued and includes a written notification of the incident and a demand for money damages in a sum certain. 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2; *Sheppard v. National Assn. of Flood Insurers,* 520 F.2d 11, 24 (3d Cir.1975). These prerequisites to suit have not been met in the present case. Accordingly, HUD's motion to dismiss the complaint will be granted.

The Court held a hearing to determine if the dismissal of HUD and the mootness of the claims for injunctive relief affected its jurisdiction over this case. The Court has concluded that its continued assumption of jurisdiction over this matter is proper and warranted. In an earlier Memorandum, reported at 510 F.Supp. 797, the Court determined that its jurisdiction over this case was proper under 28 U.S.C. § 1443(2) because the defendants were acting for the purpose of performing obligations imposed by the Order of this Court in *RAB v. Rizzo* that the Whitman townhouses be constructed. PHA was ordered to proceed with all steps necessary for the construction. A & R, the developer, and Jolly, the general contractor, performed the construction activity pursuant to contract, A & R with PHA and Jolly with A & R. Parties engaged in carrying out an affirmative order of a federal court neces-

sary to remedy civil rights violations have been held to come within the "color of authority" clause of § 1443(2) and thus held able to remove suits against them arising out of the performance of those duties to federal court. 510 F.Supp. at 800–1 (*citing Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *Bohlander v. Independent School District No. 1 of Tulsa Co., Okla.,* 420 F.2d 693 (10th Cir.1969) and other cases). The Court does not find anything in § 1443(2) or the cases construing it which limits this right of removal to cases seeking injunctive relief. *See Voinovich v. Cleveland Board of Education,* 539 F.Supp. 1100 (N.D.Ohio 1982) (suit against School Board members implementing court order removable under § 1443(2); Court denies motion for an expedited hearing on injunctive relief, finding that the plaintiffs have an adequate remedy at law). *See also Willingham v. Morgan,* 395 U.S. 402, 406–09, 89 S.Ct. 1813, 1816–17, 23 L.Ed.2d 396 (1969). (Section 1442(a)(1) grants a party acting under color of federal office a broad right of removal and the right to present to a federal court the question whether his acts were within the scope of his authority).

In any event, this Court acquired subject matter jurisdiction over this case at the time of its removal and is not deprived of jurisdiction over the remaining damage claims because of the mootness of the claims for injunctive relief. Whether subject matter jurisdiction exists in a case removed from state court "is a question answered by looking to the complaint as it existed at the time the petition for removal was filed. When a subsequent narrowing of the issues excludes all federal claims, whether a pendent state claim should be remanded to a state court is a question of judicial discretion, not of subject matter jurisdiction." *In re Carter,* 618 F.2d 1093, 1101 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *See Salveson v. Western States Bankcard Assn.,* 525 F.Supp. 566, 580 (N.D.Cal.1981) ("Once a case has been properly removed,

the federal court acquires and retains jurisdiction of state law claims regardless of the dismissal of the federal claim"). The court is convinced that the interests of justice require it to proceed to dispose of this remaining dispute involving the construction of the Whitman Park townhouses. The construction of the townhouses has required a significant involvement by this court from the inception of litigation in 1971 to the present, and the resolution of this case may involve consideration of a number of this Court's orders in this case and *RAB v. Rizzo*. There has also been an unusually large amount of discovery in this litigation, and it would appear that this case can, and should, be brought to trial in the near future. *See Goodman v. DeAzoulay*, 554 F.Supp. 1029, 1038 & n. 8 (E.D.Pa. 1983).

### Plaintiffs' Motion for Class Certification.

The plaintiffs seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure "comprised of plaintiffs and all other persons residing in and/or owners of homes located on the East side of the 2500 and 2600 blocks of South 2nd Street, and on the North side of the 100 block of Porter Street, all in Philadelphia, Pennsylvania." The plaintiffs allege that the members of this proposed class live in homes immediately surrounding the Whitman Park townhouses and that at least 150 homes have been directly affected by the construction activities, suffering substantial harm as a result. The plaintiffs also assert that the requirements of Fed.R. Civ.P. 23 for maintenance of a class action have been met and that, aside from the question of the precise amount of damage to each home, all questions of law and fact are common to the class. The defendants have not challenged the factual assertions in the plaintiffs' motion, except to state that certification of the class is precluded because questions of proximate cause and damages vary from class member to class member so that liability cannot be determined on a classwide basis.

Rule 23(c)(4)(A) allows an action to be maintained as a class action with respect to "particular issues" where appropriate and does not require that all liability issues in an action be determinable on a classwide basis before the action may be certified as a class action. Rule 23 thus "clearly envisions class actions on *any* common *issues*," and the fact that some issues require individual treatment cannot, in itself, foreclose certification. Hon. Spencer Williams, Mass Tort Class Actions: Going, Going, Gone?, 98 F.R.D. 323, 330 (1983) (emphasis in original). Although the Advisory Committee Notes to Rule 23 caution that a "mass accident" causing injury to numerous persons "is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages, but of liability and defenses to liability, would be present, affecting the individuals in different ways," 39 F.R.D. 69, 103 (1966), class certification may not be denied simply because an action can be called a "mass tort". The factual and legal issues specific to the particular litigation must be analyzed to determine if class certification is proper under Rule 23 and offers a superior method for the fair and efficient adjudication of the controversy.

In *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 448 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), the Third Circuit set out the inquiry which a district court must make in determining if a class should be certified pursuant to Rule 23(b)(3). First, the four prerequisites of Rule 23(a) must be met: the class must be so numerous that joinder of each individual member of the class would be impracticable; there must be questions of law or fact common to the class; the claims of the representative plaintiffs must be typical of the claims of the class, and the representative plaintiffs must appear to fairly and adequately represent the interests of the class. Second, the Court must identify which issues are common to the class and which are not common and determine if the common issues predominate. Third, the court must apply the fairness and efficiency criteria contained in the Rule

to determine if the class action is superior to other methods of proceeding.

*Rule 23(a).*

The first requirement of Rule 23(a) is that the class be so numerous that joinder of each individual member of the class would be impracticable. In the present action there are alleged to be approximately 375 plaintiffs, residing in over 150 dwellings affected by the construction activity. Joinder of each of these plaintiffs individually would be impracticable and unnecessary, and joinder of even a lesser number has been held almost invariably to be impracticable. *See Sharp v. Coopers and Lybrand,* 70 F.R.D. 544 (E.D.Pa.1976); *Bentkowski v. Marfuerza Compania Maritima,* 70 F.R.D. 401 (E.D.Pa.1976); 7 C. Wright & A. Miller, Federal Practice and Procedure, § 1762 at nn. 59–65 (1972 & Supp.1983).

Second, there must be issues of law or fact common to the class as a whole. The Court believes that there are such issues, and that they predominate over the issues not common to the class as a whole. Since predominance is the higher standard, *Wilensky v. Olympic Airways,* 73 F.R.D. 473, 477 (E.D.Pa.1977); 7 Wright & Miller, § 1763 at 610, the requirement that there be common issues of law or fact is met by the Court's finding below that the common issues predominate in this action.

■ Third, the plaintiffs' claim must be typical of the class as a whole. Although it is possible that the harm suffered by the named plaintiffs in this case may differ in degree from that suffered by others in the class, the alleged harm suffered by all members is of the same type. There is no indication that any difference in degree of harm suffered by the named plaintiffs would hinder them in representing the class adequately, or that any atypicality of the named plaintiffs' claims is, as it must be to deny certification on this ground, "such that the interests of the class are placed in significant jeopardy." *Sley v. Jamaica Water and Utilities, Inc.,* 77 F.R.D. 391, 395 (E.D.Pa.1977); *See Ouellette v. International Paper Co.,* 86 F.R.D.

476, 480 (D.Vt.1980). Class certification is not precluded by the fact that the amount of individual damages may differ or may have to be determined on an individual basis. *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 346–47 (3d Cir. 1977); *Samuel v. University of Pittsburgh,* 538 F.2d 991, 995 (3d Cir.1976).

■ Finally, the plaintiff must adequately represent the class he purports to represent. "Adequate representation depends on two factors: (a) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The burden is on the defendant to demonstrate that the representation will be inadequate. *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). The plaintiffs' attorney has averred that his law firm has substantial experience in property damage litigation and that his experience in representing the Whitman Council, Inc. in *RAB v. Rizzo* has familiarized him with all aspects of the litigation. He also avers that the plaintiffs will adequately represent the class. Based on this Court's experience with the plaintiffs' attorney, and the Court's knowledge of this litigation, the Court is confident that the plaintiffs will adequately represent the class in this litigation. There has been no hint that the named plaintiffs have interests antagonistic to the class they wish to represent or that their viewpoint or goals in this litigation differ from those of the other class members. The plaintiffs have thus met the requirements of Rule 23(a).

*Predominance of Common Issues of Law and Fact.*

The legal issues in this case may be set out fairly succinctly. With respect to liability for nontrespassory invasion of another's land, Pennsylvania has adopted the standard set forth in the Restatement

(Second) of Torts. *Hughes v. Emerald Mines Corp.*, 303 Pa.Super. 426, 433–34, 450 A.2d 1, 4–5 (1982); *See Waschak v. Moffat*, 379 Pa. 441, 109 A.2d 310 (1954); *Dussell v. Kaufman Construction Co.*, 398 Pa. 369, 157 A.2d 740 (1960) (action against a construction company for pile-driving damage to homes). Section 822 of the Restatement (Second) of Torts provides:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is·either:
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Only those who have property rights and privileges with respect to the use and enjoyment of the land affected and who have suffered significant harm of the kind that would be suffered "by a normal person in the community or by property in normal condition and used for a normal purpose" may recover for a private nuisance. Restatement (Second) of Torts, §§ 821E, 821F.

 The Pennsylvania courts have apparently not decided whether pile-driving is an abnormally dangerous activity for which liability may be imposed under § 822(b) above. The question was raised but not reached in *Dussell*, 398 Pa. at 372, 157 A.2d at 371. This issue is certainly one common to the class. The issue whether· the defendants' conduct was intentional and unreasonable is also appropriate for determination on a classwide basis. Conduct is intentional for the purpose of § 822 if the actor acts for the purpose of causing it or knows that it is resulting or is substantially certain to result from his conduct. Restatement (Second) of Torts, § 825; *Burr v. Adam Eidemiller, Inc.*, 386 Pa. 416, 126 A.2d 403 (1956). Intentional conduct is unreasonable if the gravity of the harm it causes outweighs the utility of the actor's conduct, if the financial burden of compensating for the harm would make the continuation of the conduct infeasible, or if the harm is greater than the injured parties should be required to bear without compensation. Restatement (Second) of Torts, §§ 826–29; *Hughes v. Emerald Mines*, 303 Pa.Super. at 434, 450 A.2d at 4–5. The Restatement makes clear that consideration of the gravity of harm caused by the actor's conduct is not limited to harm to an individual plaintiff. Comment (c) to § 827 states that "consideration may be given to harms suffered by or threatened against other parties, as well as risks of other harms that might be incurred by the complaining party." Since even as to individual cases proof of the overall effect of the defendant's actions would be admissible, determination on a classwide basis of the harm caused by the defendant, as well as of the defendants' countervailing utility arguments, is appropriate. Additional issues common to the class, aside from those concerning the defendants' conduct, include the availability of any defenses arising out of compliance with this Court's orders, and the liability of third parties arising out of their performance of work on the site or their provision of machines or services to the defendants.

Issues not common to the class include proof by each class member that the damage claimed was substantial and was proximately caused by the alleged illegal activity of the defendants at the construction site, and proof of the dollar value of the damage proximately caused by the defendants' illegal activity. The Court does not believe that these individual determinations will be complex; indeed, should the findings on the classwide issues provide a basis for ultimate determination of liability, the issues concerning the claim of each member of the class should proceed expeditiously. Of course, should the plaintiffs fail to carry their burden of proving that the classwide issues provide a basis for an ultimate determination of liability, the trial would be completed. For the above reasons, the Court is of the opinion that the issues in this litigation which are common

to the class predominate over those which are not common.

A number of cases have held class certification to be appropriate where common issues important to the litigation can be resolved on a classwide basis even though the common issues may not be dispositive. Two cases are quite similar to the present one. In *Biechele v. Norfolk & Western Railway*, 309 F.Supp. 354 (N.D.Ohio 1969), the plaintiffs brought a class action against a polluter for nuisance, and the Court certified a class for both injunctive relief and damages. By agreement of the parties, the Court first determined for the class as a whole whether there was an actionable nuisance entitling the plaintiffs to an injunction and/or damages. A special master was then appointed to hear the evidence as to the amount of damage suffered by each of the individual plaintiffs. In *Ouellette v. International Paper Co.*, 86 F.R.D. 476, 480 (D.Vt.1980), a nuisance action was brought by victims of air and water pollution. The court declined to certify a class on the air pollution claims, as the class was geographically dispersed so that the amount and type of damage differed greatly among the members of the class. As to the water pollution claims, the court noted: "Unlike these [air cases] and the 'mass accident' cases ... the water class in the present case offers a geographically discrete group asserting theoretically consistent claims as to which individual defenses to liability do not appear." 86 F.R.D. at 482. *See Payton v. Abbott Laboratories*, 83 F.R.D. 382 (D.Mass.1979) (drug products liability case; class certified on several issues prerequisite to a finding of liability` although issues of proximate cause and damages were required to be tried separately); *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D.Fla.1973), *aff'd*, 507 F.2d 1278 (5th Cir.1975). (Food poisoning on ship; certified as to negligence of food preparation; cause and damages to be tried separately); *Bentkowski v. Marfuerza Compania Maritima*, 70 F.R.D. 401 (E.D.Pa.1976) (same). *See also Causey v. Pan American World Airways*, 66 F.R.D. 392, 397 (E.D.Va.1975) (air crash; denies

certification, but notes class action "may and probably ought to be maintained" where class action limited to liability issues, class members support the action, choice of law problems are minimized and "superiority" requirements of Rule 23(b)(3) are met).

In the present case the plaintiffs are an extremely compact and discrete geographical group, readily identifiable. There are no choice of law problems. All claim to have suffered the same type of harm, during the same time period, caused by the same conduct of the defendant. This case is thus similar to those cited above in which class certification has been granted. It also differs from those "mass tort" cases in which certification has been denied because the harm to various class members took place at different times and under different circumstances, or because individual defenses or choice of law problems existed. *See Yandle v. PPG Industries*, 65 F.R.D. 566 (E.D.Tex.1974) (asbestos case; differing time, location, and duration of exposure); *Ryan v. Eli Lilly Co.*, 84 F.R.D. 230 (D.S.C.1979) (drug products liability case; different duration of use, reasons for use, knowledge of manufacturer as to danger at time of use); *Pendleton v. Trans Union Systems Corp.*, 76 F.R.D. 192 (E.D.Pa.1977) (credit reporting violations alleged; errors differed and were made at different times; different results of errors).

*Superiority of the Class Action.*

■■■ Rule 23(b)(3) sets out four factors which should be considered, among others, in determining the superiority of a class action to other methods of adjudicating the controversy. The factors denominated are:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the

difficulties likely to be encountered in the management of a class action.

The factors relevant here all support the certification of this action. First, the court is not aware of any class member who has initiated his own lawsuit or otherwise expressed an interest in controlling his own claim. The present case contains only property damage claims. Those courts which have found the interest of class members in controlling their own litigation to weigh against certification have generally done so in cases where damages for personal injuries were sought. *See Yandle*, 65 F.R.D. at 569. Second, the extent and nature of the matters heretofore initiated in this case as well as in *RAB v. Rizzo*, provide a reason for concentrating this litigation in this Court. Finally, as discussed above, since the class is geographically compact and readily identifiable maintenance of the class action will not present unmanageable problems.

Pursuant to Rules 23(b)(3) and 23(c)(4)(A), the Court will certify a class consisting of all persons who have property rights, interests or privileges in the private use and enjoyment of land located on the East side of the 2500 and 2600 blocks of South 2nd Street or the North side of the 100 block of Porter Street in the City of Philadelphia, Pennsylvania. The plaintiffs shall, within ten (10) days of the date of the Order accompanying this Memorandum, submit to the Court a proposed method and form of notice to individual class members, pursuant to Rule 23(c)(2). The class members shall be informed of the existence of the action and of their right to request exclusion from the class if they so desire.

The determination of this class action will require bifurcation, or perhaps trifurcation, of the issues. Prior to trial the Court will hold a hearing and require the issue to be briefed as to whether pile-driving and the other construction activities of which the plaintiffs complain constitute, under Pennsylvania law, abnormally dangerous activities (or, in the terms of the First Restatement, "ultrahazardous" activities), for which liability may be imposed

without fault. The Restatement chapter on abnormally dangerous activities, Restatement (Second) of Torts, Chapter 21, §§ 519–524A, has been adopted as the law of Pennsylvania. *Hennigan v. Atlantic Refining Co.*, 282 F.Supp. 667, 680 (E.D. Pa.1967), *aff'd* 400 F.2d 857 (3d Cir.1968), *cert. denied*, 395 U.S. 904, 89 S.Ct. 1739, 23 L.Ed.2d 216 (1969); *See Haddon v. Lotito*, 399 Pa. 521, 161 A.2d 160 (1960). If the Court determines that pile-driving and/or other construction activities alleged to have caused harm are abnormally dangerous under Pennsylvania law, it may not be necessary for a jury to determine whether that activity was carried out in an intentional and unreasonable manner as defined by §§ 825–31 of the Restatement. Since the plaintiffs are claiming punitive damages, a jury may also have to determine if the defendant acted outrageously, that is, with bad motive or reckless disregard for the rights of the plaintiff class members.

In the absence of a stipulation between the parties, a jury will be required to determine with respect to each individual class member whether that member's property rights, interests, or privileges were substantially invaded as a result of the conduct of the defendants and, if so, whether this substantial invasion was the proximate cause of damage to that class member and the dollar amount of that damage. In the event the jury shall find any defendant acted outrageously, the liability of that defendant for punitive damages to the individual class member will be determined along with the amount of any compensatory damages awarded.

The Court believes that the above procedure will, for all of the reasons stated above, dispose of this litigation in the most fair and expeditious manner possible.

*PHA's Motion for Summary Judgment.*

■ The PHA has moved for summary judgment, alleging in an affidavit that it cannot be liable for the injuries to the plaintiffs' properties because it did not own, possess, or control the construction site, nor did it perform, direct, supervise or control any of the construction activities.

The plaintiffs have opposed the motion and allege in an affidavit that the PHA had an "inspection representative" present on the site, who performed inspections at least weekly to insure compliance by A & R and its agents, employees, and subcontractors with the construction contract between A & R and PHA. The plaintiffs also allege that the PHA and its inspector "were fully aware at all times [of] the harm to the homes of the plaintiffs." Menefee and Foster have opposed the PHA's motion as premature.

Section 427B of the Restatement (Second) of Torts provides:

One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another or the creation of a public or a private nuisance, is subject to liability for harm resulting to others from such trespass or nuisance.

Comment (b) to the section states that imposition of liability under this section does not require that

... the trespass or nuisance be directed or authorized, or that it shall necessarily follow from the work. It is sufficient that the employer has reason to recognize that, in the ordinary course of doing the work in the usual or prescribed manner, the trespass or nuisance is likely to result.

Although the Pennsylvania courts have not explicitly adopted § 427B, we join with our colleague, Judge Ditter, in predicting that Pennsylvania will follow the section when faced with the question. *See City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1152 n. 33 (E.D.Pa.1982). Under § 427B, ownership of the property upon which the nuisance is created is not determinative, nor is the absence of control over the work performed. An employer or contractor is held liable for "farming out" work which he knows, or has reason to know, will create a nuisance. *Bleeda v. Hickman-Williams & Co.*, 44 Mich.App. 29, 205 N.W.2d 85 (1972).

The court believes that a genuine issue of material fact exists as to whether the PHA employed a contractor to do work which the PHA knew, or had reason to know, was likely to involve the creation of a private nuisance. This genuine issue of material fact precludes the entry of summary judgment in the PHA's favor. The PHA's motion for summary judgment will therefore be denied.

*Discovery Motions.*

Foster has filed a motion to compel answers to interrogatories from Jolly. There is no opposition to this motion and it will be granted. Menefee has filed a similar motion against Jolly; it is also unopposed and will be granted. The PHA has filed a motion to compel answers to its interrogatories from all parties. Jolly has responded that it has answered the PHA's interrogatories; the plaintiffs have agreed to provide a response, and the remaining parties have asked that the resolution of the motion await the resolution of the other motions pending in this case. The PHA's motion to compel will be granted with respect to those parties remaining in the case, with the exception of Jolly, and the parties will be ordered to provide full and complete answers to the PHA's interrogatories within twenty (20) days.