BLEEDA v HICKMAN-WILLIAMS & COMPANY

1. NUISANCE—INDEPENDENT CONTRACTORS—EMPLOYERS—LIABILITY.
   An employer or contractor who farms out work and who knows or has reason to know that it will create a nuisance is subject to liability for the harm caused to others by the nuisance.

2. NUISANCE—INDEPENDENT   CONTRACTORS—EMPLOYERS—PROPERTY OWNERSHIP—LIABILITY.
   An employer is not relieved of responsibility for a nuisance caused by the actions of its independent contractor simply because the nuisance emanates from the independent contractor's property and not from premises owned or maintained by the employer; the losses are placed upon the employer's enterprise itself as a required cost of doing business.

3. NUISANCE—INDEPENDENT CONTRACTORS—EMPLOYERS—LIABILITY.
   Defendant employer was subject to liability for nuisance created by its codefendant, an independent contractor principally engaged in screening coke for it, even though the nuisance emanated from the property of the independent contractor, where defendant knew how its independent contractor conducted the screening operation, which was the method contemplated by the parties at the time of contracting, and knew the extent of the damage, if any, caused adjacent property owners.

Appeal from Wayne, Benjamin D. Burdick, J. Submitted Division 1 April 6, 1972, at Detroit. (Docket No. 10549.) Decided December 6, 1972. Leave to appeal denied, 389 Mich 772.

Complaint by Edmund Bleeda and others against Hickman-Williams Company and Korno's Fuel and Lumber Supplies for maintenance of a nuisance. Partial summary judgment for defend-

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 58 Am Jur 2d, Nuisances § 54.

ant Hickman-Williams. Plaintiffs appeal. Reversed and remanded for trial.

*Ripple & Chambers* (by *Donnelly W. Hadden),* for plaintiffs.

*Garan, Lucow, Miller, Lehman, Seward & Cooper, P. C.,* for defendant Hickman-Williams Company.

Before: LEVIN, P. J., and BRONSON and VAN VALKENBURG,* JJ.

LEVIN, P. J. The plaintiffs appeal from an order of partial summary judgment dismissing their complaint against Hickman-Williams & Company, one of the two defendants. The motion asserted that the complaint fails to state a cause of action against Hickman-Williams.

The complaint alleges that the plaintiffs are owners and occupiers of various premises in the City of Ecorse near the premises of defendant Korno's Fuel and Lumber Supplies. The plaintiffs claim they have been damaged in health and property by obnoxious dust and odors emanating from Korno's plant, and that these offensive conditions constitute a nuisance.

Korno's is engaged in the business of screening —sizing—coke belonging to other persons. Korno's owns the plant and all the equipment used in the screening operation and has six or seven employees.

Hickman-Williams is Korno's principal, perhaps his only, customer. On deposition, Mr. Joseph A. Korno, the proprietor of Korno's, conceded that at

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the time his deposition was taken Hickman-Williams was his only customer. He also said that he did not process any coke for anybody else, "I been asked for it, but I cannot do it. In fact, I know I was asked for certain people and I tell them 'You have to talk to my company and see what they say. If they let you have it you have to make agreement with them to pay me or pay them.'"

Hickman-Williams owns and at all times retains title to the coke. The coke is delivered to Korno's premises by trucks belonging either to Korno's or to third persons. After the coke is screened to the sizes required by Hickman-Williams it is loaded into railroad cars for shipment to Hickman-Williams' customers.

Hickman-Williams contends that Korno's is an independent contractor and bailee, and, therefore, as a matter of law, Hickman-Williams is not liable for any nuisance caused by independent contractor Korno's. Hickman-Williams stresses that it owns no part of the premises or equipment used in the screening process, has no employees who participate in the screening and does not exercise any control over the manner in which the screening is done.

Recently, in *Sliter v Cobb,* 388 Mich 202, 205–206, 207 (1972), the Michigan Supreme Court, after reviewing its previous decisions, stated that "[w]hile it is often difficult to draw a precise line between an independent contractor and an employee, our Court has followed the generally accepted view that the test is one of control". The Supreme Court went on to say that, "[i]t is clear that in this area the result must be based on the particular facts of each case."[1]

---

[1] In *Sliter v Cobb,* 388 Mich 202 (1972), a summary judgment in favor of the defendant, a newspaper company, was reversed. The newspaper company owned and had leased a delivery route to defendant Cobb, reserving the right to cancel the lease without notice. Here

While Hickman-Williams exercises no control over the screening process, it has not been shown whether there is more than one way in which coke can be screened. Presumably, coke weighing what it does, the law of gravity is an important factor in accomplishing the desired result.

And, even if there is more than one method of screening coke, this should not be determinative if all methods of screening produce the conditions of which plaintiffs complain or if, there being a method which does not produce such conditions, Hickman-Williams engages a contractor who to Hickman-Williams' knowledge employs a method of screening that produces the complained-of conditions.

Professors Harper and James, in their treatise on the Law of Torts, wrote that while the "distinction between servant and independent contractor is commonly said to turn on whether the employer has retained control or right of control over the details of the work", "[d]ecisions on the whole tend to correspond with the way the community would look at the matter—the distinction not being esoteric—and close cases are left to the jury". 2 Harper and James, Law of Torts, § 26.11, pp 1395, 1399. They continue (p 1400):

"Perhaps the control test has been overemphasized in

Hickman-Williams owns the coke; its contractual relationship with Korno's is oral and, it would appear, cancellable at almost any time.

In *Sliter*, Cobb was forbidden by his contract with the defendant newspaper company from delivering other publications on the route without written authorization. It is apparent from Mr. Korno's testimony that he may have been under a similar constraint.

There were, indeed, other factors in *Sliter* which contributed to the Court's ultimate conclusion that whether Cobb was an employee or an independent contractor was an issue of fact; principally, that the newspaper company directed Cobb with regard to the manner of delivery, billing and dealings with customers. Here Hickman-Williams was Korno's only coke-sizing customer, and deliveries were made as directed by Hickman-Williams.

judicial reasoning. We have seen how tenuous, and often fictitious, control is even in clear master and servant cases, and how its use as a justification of vicarious liability is generally associated with the felt need for finding some sort of fault in the master. We have seen too how this attempted justification falls short and how the *chief warrant for vicarious liability must be found in the principle that an enterprise (and its beneficiaries) should pay for the losses caused by the risks which it creates (even without its fault).* In this view the existence of a general right of control may afford an added subsidiary reason for holding the employer who has it *(e.g.,* an admonition to care in selecting a competent or a financially responsible contractor), *but its absence would scarcely justify conferring upon an entrepreneur immunity for risks of his business.*

"If we are looking for risks fairly allocable to an enterprise then there is much significance in the question 'whether or not the work is a part of the regular business of the employer.' *The real question in all independent contractor cases is whether a man may 'farm out' or 'lop off' some of his affairs and escape liabilities in connection with them."* (Emphasis supplied.)

Professor Prosser, in his treatise on the Law of Torts, wrote that none of the considerations that have been advanced for vicarious liability are "so self-sufficient as to carry conviction, although they are all in accord with the general common-law notion that one who is in a position to exercise some general control over the situation must exercise it or bear the loss". He writes:

"What has emerged as the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. *The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business.* They are placed upon the employer because, having engaged in an enterprise which will, on the basis of

all past experience, involve harm to others through the tort of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large." (Emphasis supplied.)[2]

The foregoing analyses apply with equal force even though the theory of liability advanced by the plaintiffs is nuisance and not a more traditional tort theory, such as negligence or intentional wrongdoing. As stated in the Restatement of Torts, 2d § 427B, p 419:

"One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another or the creation of a *public or a private nuisance,* is subject to liability for harm resulting to others from such trespass or nuisance."

In the comment accompanying § 427B of the Restatement, Dean Prosser, the reporter, wrote:

"This exception applies to work which involves a trespass on the land of another, or either a public or a

[2] Prosser, Law of Torts (3d ed), § 68, p 471.

Similarly, Dean Prosser wrote:

"A different approach, adopted in several of the exceptions to the general rule of nonliability, has been to hold that the employer's enterprise, and his relation to the plaintiff, are such as to impose upon him a duty which cannot be delegated to the contractor." Prosser, Law of Torts (3d ed), § 70, p 483.

Also:

"It is difficult to suggest any criterion by which the non-delegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another. So far as they may be willing to broaden the category in the future, the law may approach an ultimate rule that any duty which can be found to rest upon the employer himself cannot be delegated to an independent contractor." Prosser, Law of Torts (3d ed), § 70, p 484.

private nuisance. It applies in particular where the contractor is directed or authorized by the employer to commit such a trespass, or to create such a nuisance, *and where the trespass or nuisance is a necessary result of doing the work,* as where the construction of a dam will necessarily flood other land. It is not, however, necessary to the application of the rule that the trespass or nuisance be directed or authorized, or that it shall necessarily follow from the work. It is sufficient that the employer has reason to recognize that, in the ordinary course of doing the work in the usual or prescribed manner, the trespass or nuisance is likely to result." Restatement, Torts 2d § 427B, p 419. (Emphasis supplied.)

The following case authority supports the view stated in the Restatement that an employer or contractor who farms out work and who knows or has reason to know that it will create a nuisance is subject to liability for the harm caused others by the nuisance. *James' Adm'r v McMinimy,* 93 Ky 471; 20 SW 435 (1892); *Lexington & E R Co v Baker,* 156 Ky 431; 161 SW 228 (1913); *May v Hrinko,* 137 NJL 324; 59 A2d 823 (1948).

Hickman-Williams asserts that these cases are not in point because in each case the nuisance emanated from premises owned or maintained by the person held to be liable for the actions of the independent contractor. Contrariwise, no authority is cited and we have found none which has relieved an employer of someone else simply because the nuisance did not emanate from the employer's property. On principle, we see no reason why the factor of ownership of property should be determinative.

The reasons for affixing vicarious responsibility are totally unrelated to the happenstance of ownership. If, as Professors Harper and James wrote, the "chief warrant for vicarious liability must be

found in the principle that an enterprise (and its beneficiaries) should pay for the losses caused by the risks which it creates"; and if, as Dean Prosser wrote, "losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business", then it is entirely beside the point whether the enterprise owns the land from which the nuisance emanates.

In *Shannon v Missouri Valley Limestone Co,* 255 Iowa 528, 535; 122 NW2d 278, 282 (1963), the owner of a quarry was held liable for a nuisance created by trucks traveling over an unpaved road hauling limestone from the quarry even though the truck operators were regarded as independent contractors.[3]

The reasoning of the Iowa Supreme Court is instructive:

"It is not unfair to the limestone company to hold it knows the same things about road conditions as the drivers. Certainly it cannot be heard to say it does not know road conditions leading from its quarry, and the shortest and best route to the pavement. If the limestone company used its own trucks this is the route that would be used. We hold as a matter of fact Limekiln Hollow Road was the route to be used in the contemplation of the parties at the time of contracting. When a driver was called by the company he knew and it knew he was going to use the shortest and best route to the pavement and such was Limekiln Hollow Road.

---

[3] True, the limestone was taken from land owned by the defendant owner of the quarry. But it was not the quarrying of the limestone of which the plaintiffs complained. The nuisance did not arise until trucks carrying the limestone used an unpaved road causing dirt and dust clouds to arise in their tracks. The relief granted was a requirement that the surface of the road be treated to prevent future dust damage to the plaintiffs and their property, failing which the defendant would be enjoined from using the road for hauling rock—the defendant could quarry away without violating the injunction.

In addition the limestone company has known for some time the route customarily used and the extent of the dust created."

It appears that similar observations might properly be made of defendant Hickman-Williams in regard to Korno's: That Hickman-Williams knew how Korno's conducted the screening operation. The screening method used was the method in the contemplation of the parties at the time of contracting. When Hickman-Williams caused coke to be delivered to Korno's, it knew it would be sized in the manner in which it was sized. It has known for some time the method customarily used and the extent of the damage, if any, caused the plaintiffs.

We conclude that the trial court erred in holding as a matter of law that Hickman-Williams should be permitted to lop off responsibility for a nuisance created by the screening process.

Reversed and remanded for trial. Costs to plaintiffs.

All concurred.