PICCOLINI, et al., Plaintiffs,

v.

SIMON'S WRECKING, et al.,
Defendants.

Civ. No. 86–1059.

United States District Court,
M.D. Pennsylvania.

March 22, 1988.

James Scanlon, Scranton, Pa., Bernd Heinze, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., Stephen Tasher and John Dean, Donovan, Leisure, Newton & Irvine, Washington, D.C., Ann Pepperman, McNerney, Page, Vanderlin & Hall, Williamsport, Pa., for Simon Wrecking et al.

Mark Cuker, Slap, Williams & Cuker, Philadelphia, Pa., David Cherundolo, Scranton, Pa., for Piccolini & Cherundolo.

Anthony J. Piazza, Tellie, Durkin, Weinberger, Murphy & Piazza, P.C., Scranton, Pa., Thos. Dent and M. Dolan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Thomas E. Styczen, Elmhurst, Ill., for Chamberlain Mfg. Corp.

N. Perrella and S. Picco, Greenstone and Sokol, Trenton, N.J., Mark N. Cohen, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for S & W Waste, Inc.

Allen Ertel, Reed, Smith, Shaw & McClay, Williamsport, Pa., and J. Bradford McIlvain, Reed, Smith, Shaw & McClay, Philadelphia, Pa., for Avco, Corning Glass, Zenith, Const. Fast., Schultz Electroplating & Celotex.

Irwin Shur, Eastburn & Gray, Doylestown, Pa., for Masonite.

Frank Bolock, Miller, Cali, Cecchini & Bolock, Scranton, Pa., for Lacka Ref/Iacavazzi, N.E. Land.

John McLane, Scranton, Pa., Martin P. Olney, Washington, D.C., for Huller Lane & Hamilton Intern.

Richard Fine, Bialkowski, Fine & Bialkowski, Scranton, Pa., T. Garrett and R. DeSanti, Covington & Burling, Washington, D.C., for Proctor & Gamble.

Wm. Stanley Morton, Sr. Counsel, The Proctor & Gamble Co., Cincinnati, Ohio.

William Haggerty, Morgan, Hallgren, Crosswell & Kane, Lancaster, Pa., Spindel, Scott & Ricci, Lowenstein, Sandler, Kohl,

Fisher & Boylan, Roseland, N.J., for Berkley Prod. & Rola Co.

Gary Gushard, T. Arensberg, P.C., Pittsburgh, Pa., David Bunnel and Ralph Waechter, Pittsburgh, Pa., for Aluminum Co. of America.

Maida Rosenfeld Crane, Joseph P. Hart, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for GAF Corp.

William W. Warren, Scranton, Pa., for Owens-Illinois, Inc.

Dorothy Hammitt, S. Braver, T. Reed, L. Mead, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for GTE Service/Products.

Donald Joseph and Wolf, Block, Schorr & Solis Cohen, Philadelphia, Pa., for TRW, Inc. and Inland Pumping.

Lynn Clouser, Frank Thomas, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for Airco Carbon Div. Boc Group, Amp. Inc. and Fairchild Weston.

Jennifer Berke, Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for Rockwell Intern.

Michael Roth, Scranton, Pa., for Dana Corp.

John Ubinger, Jr., Eckert, Seamans, Cherin & Mellotti, Pittsburgh, Pa., for Avery Intern. & Westinghouse.

Kevin Lucas and James Walker, Mannion, McDonough & Lucas, P.C., Pittsburgh, Pa., for Elliot Turbomachinery.

Susan LeGros and Lloyd Gelwan, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Mack Trucks, Inc.

Wm. J. Taylor and Thos. Masterson, Taylor & Taylor, Philadelphia, Pa., for Champion Valley Farms.

Howard Spizer and Paul Ackourey, Spizer & Ackourey, Scranton, Pa., for Mercantile Financial.

Harry W. Reed, Jr., Bernerd A. Buzgon, Bradford H. Charles, Timothy J. Huber, Davis, Katz, Buzgon, Davis, Reed & Charles, Ltd., Lebanon, Pa., for N.Y. Wire Co.

Hershel Richman, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for Air Prod & Chem & Supelco.

E. Mitchell and R. Gray, Williamsport, Pa., for Piper Aircraft.

Joseph Donley and P. Kittredge, Kittredge, Kauffman & Donley, Philadelphia, Pa., for Westvaco Corp.

T. Bossert and E. Dougherty, McNees, Wallace & Nurick, Harrisburg, Pa., for Textile Chemical Co.

H. Wein and H. Klodowski, Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for Centre Engineering.

Larry L. Yetter, Jennie M. Crowley, Theodore F. Craver, Beverly Hills, Cal., for Fitchburg CPA.

Donald K. Joseph, Mary Elizabeth Ward, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for RCA Corp.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### INTRODUCTION

This is an action brought in 1986 by the owners of properties adjacent to the Iacavazzi landfill, otherwise known as the Old Forge Landfill, in Old Forge, Pennsylvania, (hereinafter referred to as "Landfill"). The Plaintiffs allege that their property has been contaminated as a result of waste placed at the landfill. The complaint in this action seeks relief under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.* with pendent state claims for negligence, nuisance, trespass and strict liability. The Defendants in this action are the owner and operator of the landfill and numerous generators and haulers of the toxic waste which was disposed of in the landfill. This Memorandum will address the issues presented in the Defendants' motion to dismiss relating to the question of whether the Plaintiffs have incurred response costs necessary to support their CERCLA cause of action, and whether the pendent state law claims are insufficient as a matter of law and barred by the applicable statutes of limitations. For the reasons that follow we will deny the Defendants' motion to dismiss.

## PROCEDURAL HISTORY

The complaint in this case was filed on August 1, 1986. For the sake of clarity, the Court notes that a related action was brought in 1984, against the landfill operators and transporters with unidentified generators listed in the complaint only as "John Doe's."

On October 20, 1986, Plaintiffs filed an amended complaint against 17 separate Defendants. The causes of action stem from the waste materials located at the landfill site in Old Forge, Pennsylvania. The Defendants are divided into three distinct groups:

(1) The owners and operators of the site (hereinafter referred to as "Operator Defendants");

(2) The transporters of the waste to the site (hereinafter referred to as "Transporter Defendants");

(3) The generators of the waste purportedly disposed of at the site (hereinafter referred to as the "Generator Defendants").

In response to the Plaintiffs' second amended complaint, the "Generator Defendants" have moved to dismiss every count of the complaint. Additionally, some of the Generator Defendants have moved in the alternative to a dismissal under Federal Rule of Civil Procedure 12, that the Plaintiffs supply them with a more definite statement.

On June 4, 1987, this Court filed a management order requiring the Plaintiffs to submit "the substance of the testimony and evidence on which the Plaintiffs will rely to establish a prima facie case". In response to the material submitted by the Plaintiffs and their memorandum in support of their prima facie case, the Defendants filed a brief in opposition to the Plaintiffs' prima facie case. The Plaintiffs thereafter filed a reply to the brief in opposition to their prima facie case.

## FACTUAL BACKGROUND

For a period of years preceding 1979, it is alleged that the Generator Defendants, acting directly through the Operator and/or Transporter Defendants, disposed of toxic and hazardous substances at the landfill site in Old Forge, Pennsylvania. The disposal of the above referenced hazardous materials at the landfill was alleged to be illegal and in violation of the permit issued by the Pennsylvania Department of Environmental Resources ("Pa.DER") to the owners and operators of the landfill. As a result of the said illegal activities, the Pa. DER ordered the landfill to be closed due to the severity of the landfill's contamination by the toxic substances and the resulting environmental threat to the surrounding area, the United States Environmental Protection Agency ("E.P.A.") has designated the landfill for inclusion on the National Priorities List of Hazardous Waste Sites pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") 42 U.S. C. § 9601, *et seq.*

Plaintiffs allege that they learned of the illegal disposal of hazardous and/or toxic waste at the landfill on or about 1979 and the said disposal constituted a dangerous condition to the Plaintiffs and their families.

As a result of the presence of the hazardous substances deposited at the landfill, it is alleged that the surrounding environment, including the soil, air, and water have been seriously contaminated. For instance, the surface waters and soil, and the surrounding ground water supply is threatened by the migration of pollutants and contaminants emanating from the landfill. The land surrounding the landfill has been rendered unable to sustain the growth of trees, shrubs and foliage and grass which has resulted in increased "runoff" and soil erosion which allegedly still continues. These factors have contributed to the migration of contaminants to the surrounding surface waters, and thereby increase the concentration of toxic and hazardous substances contained in that water. The Plaintiffs further allege that the contaminated soils and surface water surrounding the landfill results in the release of vapors contaminating the air with various organic vapors and toxic gases.

The Plaintiffs allege that the situation at the landfill and the surrounding area constitutes a continuing tort.

Plaintiffs ground their complaint on five separate theories. Count I is grounded on CERCLA and avers that the Defendants' acts or omissions caused contaminants to be released at the landfill which has caused Plaintiffs to incur response costs. Count II of the complaint sounds in strict liability, and alleges that the Defendants' dealings with the hazardous chemical wastes at the landfill comprised an abnormally dangerous and/or ultrahazardous activity which subjects the Defendants to strict liability for all the resultant harm. Count III sounds in negligence claiming the Defendants failed to take reasonable precautions so that the Plaintiffs' persons or property would not be contaminated by the hazardous waste or toxic substances. Count IV of the complaint alleges that the disposal of hazardous waste at the landfill created a nuisance causing the Plaintiffs substantial and unreasonable interference with the use and enjoyment of their property. Count V of the complaint alleges that the actions and inactions of the Defendants have caused an invasion by pollution of the Plaintiffs' interest in the exclusive possession of their land constituting a trespass.

As a result of the actions of the Defendants, Plaintiffs allege that they have incurred expenses in an attempt to repair the physical damages to their property resulting from the above-described contamination, that the value of the Plaintiffs' property has been substantially diminished as a result of the contamination and its widespread media coverage, and that they have been forced to incur expenses relating to air, water, soil testing, as well as other cause related to transportation expenses and well monitoring. The Plaintiffs allege that the said costs are within the type of costs held recoverable under CERCLA by the courts.

As indicated previously, the Defendants have moved that we dismiss some, if not all, of the counts pursuant to Fed.R.Civ.P. 12(b)(6). Accordingly, each count will be considered to determine whether it fails to state a claim upon which relief can be granted.

## CERCLA CLAIM

Defendants have moved for the dismissal of Count I of the Plaintiffs' second amended complaint which seeks to recover "response costs" pursuant to CERCLA, 42 U.S.C. §§ 9601 et seq., as amended by the Superfund Amendment and Reauthorization Act of 1986, Pub.L.No. 99–499, 100 Stat. 1613 (SARA). Alternatively, Defendants request that this court rule that certain damages claimed by Plaintiffs are not recoverable under CERCLA since they do not constitute "response costs."

With regard the types of costs allegedly incurred by the Plaintiffs, the amended complaint states:

72. As a result of said release of contaminants caused by defendants' acts or omissions, plaintiffs incurred, and have continued to incur, those "response costs" "necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances" or "necessary to prevent, minimize, or mitigate damage to the public health or welfare, or to the environment...." 42 U.S.C. § 9601(23).

73. Said response costs were consistent with the National Contingency Plan. 40 C.F.R. 300 et seq.

74. Said response costs include, but are not limited to, expenses related to air, water, soil testing, cost of clean up, relocation expenses, transportation expenses, well-monitoring, and the loss of the use of wells, gardens, and property.

. . . . .

76. Pursuant to 42 U.S.C. § 9607(a)(4)(B) defendants are strictly and jointly and severally liable to plaintiffs for all costs incurred in responding to the release of contaminants caused by defendants' acts and omissions.

Plaintiffs' second amended complaint, doc. 51, ¶¶ 72–74, 76.

The Comprehensive Environmental Response, Compensation and Liability Act, creates a private cause of action against responsible parties for the recovery of necessary costs of response incurred which are

part of a clean-up or response to a hazardous waste problem. CERCLA defines "response" actions to be of two types: "removal" actions and "remedial" actions. "Removal" actions are primarily those intended for the short-term abatement of toxic waste hazards, while "remedial" actions are typically those intended to restore long-term environmental quality.

Congress has defined removal actions as: [T]he clean-up for removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under Section 9604(b) of this Title, and any emergency assistance which may be provided under the Disaster Relief Act of 1974 [42 U.S.C.A. § 5121 et seq.].

CERCLA Section 101(23), 42 U.S.C. § 9601(23).

Remedial actions were defined by Congress as:

[T]hose actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment....

CERCLA Section 101(24), 42 U.S.C. § 9601(24).

It is clear from the above definitions that Congress intended the term "response costs" to encompass a broad range of activities and that the provisions defining response costs be interpreted liberally.

 For the purposes of the present motions to dismiss, this Court is obligated to accept as true the allegations of the Plaintiff contained in the complaint. In that regard, it appears that the Plaintiffs have alleged "response costs" which clearly fall within the definition of removal costs as defined by CERCLA Section 101(23), 42 U.S.C. § 9601(23). On the other hand, the Defendants' objection to any language in the complaint which can be construed as seeking monetary damages as compensation for the alleged loss of value of land is well taken. Response costs "must be part of a—clean up—or response to a hazardous waste problem, however, a private right of action for damage is not available under the Act." *Adams v. Republic Steel Corporation*, 621 F.Supp. 370, 376 (D.C.Tenn. 1985).

In that regard, this Court finds that Plaintiffs' request for damages which can be construed as seeking damages for diminution in property value and lost income are not recoverable under CERCLA.

STATE LAW CLAIMS

Having found that the Plaintiffs' CERCLA claim is properly before this Court, we turn to the question of whether the Court has jurisdiction to hear Plaintiffs' state law claims. As a general matter, multiple claims are most efficiently disposed of in a single proceeding, at least where a "common nucleus of operative fact" underlies those claims. As the Court in *Ambromovage v. United Mine Workers of America*, 726 F.2d 972 (3d Cir.1984) stated, "[w]here there is a series of claims based on the same facts, including at least one state and one federal claim, ancillary or pendent jurisdiction is necessary to avoid presenting the parties with the 'Hobson's choice' of litigating the same facts twice or losing their right to a federal forum to decide the federal claims." The *Ambromovage Court* pointed out, however, that ancillary and pendent jurisdiction is necessarily limited

by the principles of federalism which underlie constitutional and statutory limits on federal jurisdiction. *Id.* at 989. To reconcile these conflicting policies the Third Circuit applies a "three-tiered" analysis that determines whether pendent jurisdiction should be exercised in a particular case. The Court stated:

> On the first level, a court must determine whether it has constitutional power to determine a state-law claim. This "power" test depends on whether there is a "common nucleus of operative fact" between the state claim at issue and the accompanying federal claim. As we see it, [*United Mine Workers v.*] *Gibbs* [383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218] provides the unifying principle which limits the extent of federal jurisdiction over both pendent and ancillary claims. The second level requires the court to determine whether the exercise of jurisdiction at issue would violate a particular federal policy decision, such as the requirement of complete diversity or the explicit exclusion of a particular party from federal liability for the actions alleged in the complaint. At this level, the court may consider whether the Plaintiff's assertion of ancillary or pendent jurisdiction is an attempt to manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes. The issue generally turns on statutory interpretation. The final level—prudential in character—is for the district court, in its discretion, to weigh various factors bearing on the appropriateness of hearing a pendent claim.

*Id.* at pp. 989–90.

■ The "common nucleus of operative fact" test is met in this case since both the federal and state law claims all arise out of the Defendants' acts and omissions in creating the landfill. The second tier is similarly met since the Defendants have failed to demonstrate any federal policy that requires that federal jurisdiction not be exercised over the Plaintiffs' state law claims. Finally, the third tier which involved a balancing of a consideration of fairness to the litigants, judicial economy, and the interest of federalism, presents the court with no prudential reason which would require that

the district court decline to exercise jurisdiction. To the contrary, it would be an undue burden to require the litigants to both prosecute and defend the claims in this case in two separate forums. In light of the above, pendent jurisdiction over the state law claims will be exercised.

## STRICT LIABILITY

■ The Defendant Generators have moved to dismiss Count II of the Plaintiffs' second amended complaint which alleges a cause of action under the theory of strict liability. The complaint states that the Defendants, in engaging in the disposal of toxic waste at an illegal, unpermitted landfill is an abnormally dangerous and/or ultrahazardous activity that would subject one carrying out the activity to strict liability for all resultant harm.

Under the Restatement (Second) of Torts Sec. 520, the definition of "abnormally dangerous activity" is as follows:

> In determining whether an activity is abnormally dangerous, the following factors are to be considered:
>
> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Under the allegations contained in the complaint, we cannot find as a matter of law that the Plaintiffs have failed to allege a claim upon which relief can be granted. As the Plaintiffs point out, there are many factors that come into the equation when attempting to determine whether an activity is abnormally dangerous, and to properly analyze the question and issues involved the Court will require a more complete record. Therefore, the Defendants' motion

to dismiss the strict liability count will be denied.

NEGLIGENCE

■ The Plaintiffs have alleged in Count III of their complaint that the Defendant Generators engaged the services of Defendant Waste Haulers and Disposers to carry and dispose of toxic chemical waste produced by the generators. The Plaintiffs also aver that the Waste Haulers and Disposers acted as agents, servants, employees and/or contractors of Generator Defendants in disposing of the toxic chemicals. The Plaintiffs' complaint alleges that the Generator Defendants breached a variety of duties owed to the Plaintiffs and that the Plaintiffs suffered damages as a result. Plaintiffs aver, *inter alia,* that the Defendants failed to use due care in the transportation and disposal of the hazardous waste; failed to take reasonable precautions to prevent harm to the Plaintiffs' property; failed to repair the conditions that they caused; failed to warn the Plaintiffs of the conditions; negligently selected independent contractors to dispose of the hazardous waste; failed to exercise reasonable care to supervise the work of their contractor; and disposed of hazardous waste at the landfill when they knew or should have known that disposal there was unsafe. As the Court finds that these allegations clearly state a claim under a negligence theory, there is no need to further discuss this issue and the Defendants' motion to dismiss is hereby denied.

NUISANCE

The Generator Defendants have moved for the dismissal of the Plaintiffs' nuisance claim because there are no allegations that the Generator Defendants owned, controlled, or possessed the landfill, nor were there any allegations which made the Generators "independent contractors" with respect to the landfill.

The Plaintiffs have opposed the motion by citing § 427B of the Restatement (Second) of Torts (1965) which provides:

> One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another or the creation of a public or a private nuisance, is subject to liability for resulting to others from such trespass or nuisance.

■ Under Section 427B, ownership of the property upon which the nuisance is created is not determinative, nor is the absence of control over the work performed. An employer or contractor is held liable for "farming out" work which he knows or has reason to know, will create a nuisance. *McQuilken v. A & R Development Corp.,* 576 F.Supp. 1023 (E.D.Pa. 1983); *Bleeda v. Hickman-Williams & Co.,* 44 Mich.App. 29, 205 N.W.2d 85 (1972).[1]

> In the instant case, the Plaintiffs allege: (E)ach and every defendant knew or should have known that the disposal of hazardous waste being conducted at the landfill was likely to create a nuisance condition so as to interfere with the use and enjoyment by Plaintiffs of their property.

(second amended complaint, doc. 65, para. 87).

The complaint further alleges that the Defendant Waste Haulers and Landfill Owner-Operators, acting as employees and/or contractors of Defendant Waste Generators, improperly and illegally hauled hazardous waste to the landfill for dumping, and that the Generator Defendants

---

**1.** A review of Pennsylvania case law indicates that Section 427B of the Restatement has not been explicitly adopted as the law of Pennsylvania in any reported case. Nonetheless, this Court agrees that the District Court for the Eastern District of Pennsylvania, that the Pennsylvania Courts would follow the Restatement if presented with a similar issue. *McQuilken v. A & R Development Corp., supra.; City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1152 n. 33 (E.D.Pa.1982). As the *City of Philadelphia* Court points out, the Pennsylvania Courts have "not hesitated to adopt sections of the Restatement when their common law precedence vary from the Restatement or when the Pennsylvania common law provides no answer." *City of Philadelphia, supra.* citing *Gilbert v. Korvette's Inc.,* 457 Pa. 602, 611–12 n. 25 (1974).

knew or should have known that its waste was being disposed at a landfill not licensed to receive those substances.

Taking, as we must, the allegations in the complaint as true, the Plaintiffs have clearly stated a claim under Section 427B of the Restatement (Second) of Torts, since the generators' liability is not dependent upon ownership of the property or upon any degree of control over the work performed, nor is there any requirement that plaintiff have the status of an independent contractor. Instead, liability may attach on the sole ground that the Defendants, when employing the contractor, had reason to recognize that the trespass or nuisance was likely to result if the work was done in the usual manner. *See* Restatement (Second) of Torts Section 427B, comment (b).

Perhaps a large degree of the dispute on this count stems from the "nuisance" label the parties have placed on this claim. Defendants point out that a private nuisance has traditionally been viewed as a person's unreasonable use *of his own* property which causes damage to another's legitimate enjoyment of his right of person or property—and here, the Generator Defendants do not own the landfill. Nonetheless, the Court finds that Plaintiffs have stated a tort claim against the Generators under Section 427B; despite the dispute which underlies the count's "nuisance" label. For the foregoing reasons, the Generator Defendants' motion to dismiss this count will be denied.[2]

## STATUTE OF LIMITATIONS

The Defendants assert that the state law claims, Counts 2 through 5, should be dismissed because they are barred by the relevant Statute of Limitations. In support of this argument, the Defendants cite Title 42 Pa. C.S.A. § 5524(4) and (7) as establishing

that a two-year limitations period applies to Plaintiffs' claims.

In response, the Plaintiffs point out that subsection (7) of the applicable statute was added by an amendment on December 20, 1982, to take effect in 60 days or on February 20, 1983. Plaintiffs further point out that Section 403 of the Act of 1982, December. 20 P.L. 1409, No. 326, expressly provided that the amendment to Section 5524 "shall apply only to causes of action which accrue after the effective date of this Act." Plaintiffs argue that the complaint in the case at bar states that the cause of action accrued generally in 1979, and therefore, Section 5524(7) does not apply.[3]

Defendants point out that even if the court determines the 6–year Statute of Limitations is applicable to some claims, those claims are still barred. The Defendants argue that the amended complaint establishes that Plaintiffs learned of the problem surrounding the landfill in 1979, but did not file this action until 1986, approximately seven years later.

The Plaintiffs recognize this problem and suggest three alternate theories to preclude the Statute of Limitations from barring their claims: (1) that the Statute is tolled by the discovery rule; and (2) that the Statute is tolled by Defendants' concealment of their actions; and (3) that the Defendants' actions and omissions constitute a continuing tort.

## DISCOVERY RULE

Plaintiffs allege that the Statute of Limitations should be tolled because they could not have ascertained the identity of the Generator Defendants in the exercise of reasonable diligence. Plaintiffs recognize that under *Cathcart v. Keen Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984), the burden is on an injured party once he discovers the cause of his

2. On similar reasoning, this Court finds that the Plaintiffs have stated a claim in trespass and, accordingly, Defendant's motion to dismiss this count is denied. As Section 427B points out, liability may fall on a defendant for farming out work which they know, or have reason to know, will create a trespass. The Plaintiffs' second amended complaint contains a similar allegation at paragraph 37.

3. This issue as it pertains to the Generator Defendants is seemingly resolved by the holdings in this memorandum. Therefore, the Court makes no ruling on this issue herein. Should this question again arise, additional briefing will be required.

injuries to determine within the statutory period the party's whose negligence or breach of duty were responsible for the event or condition. Plaintiffs maintain, however, that the burden of determining the negligent party is not absolute, and that an exception to the rule should exist to provide that obstacles that are so overwhelming to preclude discovery even in the exercise of reasonable diligence would toll the Statute under *Cathcart.* Thus, the Plaintiffs seek a ruling that where the Plaintiffs could not, in the exercise of reasonable diligence, identify a Defendant within the statutory period, the claim is therefore tolled.

The Defendants, on the other hand, assert that since the Plaintiffs admit that they were aware of the alleged improper disposal of hazardous waste at the landfill and the dangerous condition as early as 1979, the Statute cannot be tolled under the discovery rule. More specifically, Defendants maintain that the Plaintiffs are under a duty to use all reasonable diligence to inform themselves of the facts upon which a potential action may be based, and that the lack of knowledge on the part of the Plaintiffs is insufficient to toll the running of the Statute of Limitations. The Defendants maintain that the Plaintiffs' contention that the Statute is tolled if Plaintiffs are confronted with overwhelming obstacles which preclude the discovery of all defendants is not representative of Pennsylvania law on the subject.

As a general rule, the Statute of Limitations begins to run in a tort case when the cause of action accrues, meaning the date the injury is sustained. The "injury is done when the act heralding a possible tort inflicts damage which is physically objection and ascertainable." *See Larthey by Larthey v. Bland,* 367 Pa.Super. 67, 532 A.2d 456, 458 (1987) *citing Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). In the event the statutory period expires, a party may only bring suit if he can establish that an exception to the general rule applies which tolls the Statute of Limitations.

In *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 85, 468 A.2d 468 (1983), the Pennsylvania Supreme Court indicated an exception to the general rule:

> The -discovery rule- is such an exception, and arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause .... the salient point giving rise to the equitable application of the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury. The court presented with an assertion of applicability of the 'discovery rule' must before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action. (emphasis in original) [4]

In *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 136–37, 471 A.2d 493 (1984) (en banc) the court in explaining the discovery rule, set forth the applicable standard as whether "the plaintiff knows or reasonably should know: (1) that he had been injured and (2) that his injury has been caused by another party's conduct." However, Plaintiffs need not know that they have a cause of action or that the injury was caused by another party's wrongful conduct. *See Chandler v. Johns-Manville Corp.,* 352 Pa.Super. 326, 330–31,

---

4. The Pennsylvania Courts have recognized that the defense of the Statute of Limitations is not a technical defense but is substantial and meritorious.

"Statute of Limitations are vital to the welfare of society and favored in the law.... They promote repose by giving a stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence .... mere delay, extended to the limit prescribed, is itself a conclusive bar."

*Schmucker v. Naugle,* 426 Pa. 203, 205–206, 231 A.2d 121 (1967) *quoting United States v. Oregon Lumber Co.,* 260 U.S. 290, 299–300, 43 S.Ct. 100, 103, 67 L.Ed. 261 (1922).

The Pennsylvania Supreme Court also stated that the "purpose of any Statute of Limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." *Insurance Co. of North America v. Carnahan,* 446 Pa. 48, 284 A.2d 728 (1971).

507 A.2d 1253 (1986); *Price v. Johns-Manville Corp.*, 336 Pa.Super. 133, 137–39, 485 A.2d 466 (1984). Instead, "once [a plaintiff] possesses the salient facts concerning the occurrence of his injury and *who* or *what* caused it, he has the ability to investigate and pursue his claim." *Berardi v. Johns-Manville Corp.*, 334 Pa.Super. 36, 44, 482 A.2d 1067 (1984) (emphasis in original) (quoting *Staiano v. Johns-Manville Corp.*, 304 Pa.Super. 280, 288, 450 A.2d 681 (1982)). *See also Urland v. Merrell-Dow Pharmaceuticals*, 822 F.2d 1268, 1275 (3d Cir.1987). The Court in *Anthony v. Koppers Co.*, 284 Pa.Super. 81, 89, 425 A.2d 428 (1980) noted that the "application of the rule has been based upon the recognition that if a party, despite the exercise of diligence, *cannot ascertain his injury*, the statute of limitations should not run against his claim."

Moreover, the burden is on the injured party, once he discovers the cause of his injuries to determine within the statutory period (unless there is fraud or concealment), the party or parties whose negligence or breach of duty was responsible for the injuries. In that regard, the Court in *Cathcart, supra*, found that "an allegation of mere difficulty in identifying Defendants was not sufficient to toll the running of the Statute of Limitations...." *Id.* 324 Pa.Super. at p. 139, 471 A.2d 493.

In light of the above, this Court finds that the alleged inability of the plaintiff to identify parties responsible for the cause of an injury is insufficient to invoke the discovery rule. Instead, the discovery rule only tolls the Statute of Limitations up until the point when a person realizes or should realize that he has been *injured* by another party's conduct. There is nothing in the rule that provides for the further tolling of the Statute until every responsible party can be identified. To the contrary, the Court in *Cathcart* expressly stated that it was the burden of the injured party to determine whose conduct caused the damages. *See also Trieschock v. Owens Corning Fiberglass Co.*, 354 Pa.Super. 263, 511 A.2d 863, 866 n. 3. (1986).

The above holding is supported by a number of federal courts which interpreted the discovery rule in the context of the Federal Torts Claim Act. In an analogy to these federal cases, we note that in *Bickford v. Joson*, 368 Pa.Super. 211, 533 A.2d 1029 (Pa.Super.1987), the court found that the discovery rule under Pennsylvania law closely parallels the Supreme Court's expression of the rule as it pertains to the Federal Torts Claim Act. *See United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick*, the Supreme Court indicated that the accrual of a claim would be delayed until the injured party learns of both the fact of his injury and its cause. This language is identical to the Pennsylvania Supreme Court's characterization of the discovery rule components simply as the inability despite reasonable diligence to determine "the injury or its cause." *Pocono International Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 86, 468 A.2d 468 (1983). The question then becomes whether "cause" is known when the immediate physical cause of the injury is discovered or when the responsible party who caused the injury is discovered. In *Dyniewicz v. United States*, 742 F.2d 484 (9th Cir.1984), the Ninth Circuit considered this question. Writing for the Court, then Circuit Judge Anthony M. Kennedy stated:

Discovery of the cause of one injury ... does not mean knowing who is responsible for it. The "cause" is known when the immediate physical cause of the injury is discoverable.

742 F.2d at 486. *See also Davis v. United States*, 642 F.2d 328, 330 (9th Cir.1981) *cert. denied*, 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982) (cause accrued when plaintiff learned polio vaccine had caused his injury not when he discovered that HEW had negligently tested it); *Steele v. United States*, 599 F.2d 823 (7th Cir.1979) (plaintiff's lack of knowledge that FAA had negligently left on power to transformer box, from which plaintiff received electric shocks, was irrelevant).

Our Third Circuit also considered this question and reached the same result in *Zeleznik v. United States*, 770 F.2d 20 (3d

Cir.1985). There, the parents of a murder victim brought a Federal Torts Claim Act suit against the Immigration and Naturalization Service alleging that it negligently permitted the murderer to leave after he had attempted to surrender as an illegal alien before committing the crime. The Court, in finding that the action was time-barred held that the parents cause of action accrued at the time they knew of their injury and its immediate cause, i.e., at the time of the murder of their son, and their ignorance of INS involvement was irrelevant. In interpreting the language in *Kubrick*, which was the very language cited by the Pennsylvania Superior Court in *Bickford*, the Third Circuit stated:

> The Court's language suggests that once an injured party learns of his injury and its immediate cause, then he is on the same footing as any other injured party. The fact that a reasonably diligent investigation would not have discovered the defendants involvement is no longer relevant for the purposes of accrual of the State of Limitations.

*Zeleznik, supra,* at p. 24.

In light of the above, the Plaintiffs admission in the Complaint that they were aware in 1979 that toxic chemicals had been illegally deposited at the landfill causing damage to their land precludes the discovery rule from tolling the running of the Statute of Limitations.

CONCEALMENT

Plaintiffs state that the Generator Defendants had thousands of drums of toxic waste buried in the landfill and that the names of these generators *may* be visible on the drums. However, the drums themselves cannot be examined absent stringent safety precautions. Plaintiffs claim that buried drums are "concealed", and it is obvious that this "concealment" prevented Plaintiffs from identifying the Generator Defendants. Accordingly, Plaintiffs suggest that this concealment estops the Defendants from invoking the Statute of Limitations.

As previously mentioned, Pennsylvania law provides that mere mistake, misunderstanding, or lack of knowledge on the part of the Plaintiffs is insufficient to toll the running of the Statute of Limitations. However, if the Defendant through fraud or concealment causes the Plaintiffs to relax vigilance or deviate from the right of inquiry, the Defendant is estopped from invoking the defense of the Statute where the Plaintiffs could not, through the use of reasonable diligence, have ascertained the facts constituting the cause of action. *See Urland v. Merrell-Dow Pharmaceuticals,* 822 F.2d 1268 (3d Cir.1987). A party relying on this doctrine will be entitled to a tolling of the Statute of Limitations by proving that there has been either intentional or unintentional deception by the Defendant, *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 96, 204 A.2d 473 (1964), and the statute will be tolled until the Plaintiffs would, through the exercise of reasonable diligence, have discovered the fraudulent concealment. *See Urland,* 822 F.2d at 1274. The Plaintiff, however, must prove such fraud or concealment by clear, precise, and convincing evidence. *Ritter v. Theodore Pendergrass,* 356 Pa.Super. 422, 431, 514 A.2d 930 (1986).

By including that unintentional deception tolls the statute, the Pennsylvania Courts have adopted a broad view of the concealment doctrine. Nevertheless, the doctrine cannot be invoked unless the Defendants "have done something amounting to an affirmative inducement to Plaintiff to delay bringing the action." *Gravinese v. Johns-Manville Corp.,* 324 Pa.Super. 432, 471 A.2d 1233, 1238 (1984). Thus, in order to relieve a party of the Statute of Limitations bar, "the concealing screen must have been erected by his adversary." *McNair v. Weikers,* 300 Pa.Super. 379, 392 (1982) citing *Nesbitt,* 416 Pa. at 96, 204 A.2d 473; *see also Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548 (3d Cir.1985). This is because the "estoppel theory" exception is premised on the concept that when an injured party is lulled into a sense of false security or misled by the tortfeasor resulting in the claim being untimely filed, then the culpable party will be precluded from raising a statute of limitations' bar.

*Petri v. Smith,* 307 Pa.Super. 261, 269, 453 A.2d 342 (1982).

■ The court is not presented with any allegation in this case that the Generator Defendants acted in a manner which would have caused the Plaintiffs "to relax vigilance or deviate from the right of inquiry." *Nesbitt,* 416 Pa. at 92, 204 A.2d 473. Instead, the Plaintiffs only rely on the fact that the drums were unable to be examined to support their allegation of concealment. On the face of the complaint though, the Plaintiffs were clearly aware that toxic waste had been buried in the landfill causing injury to their property. Hence, there is nothing that would create an issue of fraud or concealment sufficient foreclose the raising the statute of limitations.

The Plaintiffs seem to suggest that if one means of discovery is obscured from view there is a concealment situation which would toll the statute until the parties are identified through some other means. We do not read the case law to support the Defendants argument. Instead, this court finds that the statute may only be tolled if the Defendants' conduct caused the plaintiffs to deviate from the right of inquiry. Even then, the toll only lasts until one, through the exercise of reasonable diligence, would learn of his deception or the cause of action through some other means. Here, the deception alleged is that the Generator Defendants' toxic waste, which *may* have had the Defendants' names on the drums, was obscured from view by being buried in the landfill. As the allegations stand, the Court finds as a matter of law that such does not constitute allegations of concealment that would work to estop the Defendants from raising the statute of limitations.

## CONTINUING TORT

Plaintiffs' final argument against dismissal of its pendent state law claims rests on the theory that the Defendants' disposal of the toxic waste constitutes a continuing tort. The Plaintiffs cite the Restatement (Second) of Torts, § 161, Comment (b) to explain the effect of a continuing tort on the accrual of a cause of action:

(b) Continuing trespass. The actor's failure to remove from land in the possession of another thing which he has tortiously ... placed on the land constitutes a continuing trespass for the entire time during which the thing on the land and ... confers on the possessor of the land in option to maintain a succession of actions based on a theory of continuing trespass or to treat continuance of the thing on the land as an aggravation of the original trespass.

Plaintiffs maintain that the continuing tort theory applies for a continuing nuisance and also relates to "continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of another." *See* Plaintiffs Brief in Opposition, Doc. # 65, pp. 33–34 *citing* Restatement (Second) § 899, Comment D.

The Plaintiffs explain the recurrent nature of the Defendants' torts as follows: [T]he surrounding environment, including soil, air, and water, has been seriously contaminated by toxic substances deposited at the landfill. (Para. # 38). Surface waters flowing through Plaintiffs' property are contaminated (Para. # 39). As a result of the contamination alleged, the land surrounding the landfill cannot sustain the growth of foliage, trees, etc. (Para. # 44). The absence of foliage has resulted in increased "runoff" and soil erosion, and will continue to do so for the foreseeable future (Para. # 45). The increased "runoff" and soil erosion is hastening the migration of contaminants to surrounding surface waters, thereby increasing the concentration of toxic substances thereon (Para. # 46). This condition constitutes a continuing threat of contamination to Plaintiffs' properties (Paras. # 49, # 55, # 57, # 63). The Defendants negligently failed to remedy this condition (Para. # 82)(d).

The Plaintiffs further argue: In short, the complaint fairly states a claim that Defendants created a condition which has resulted in the continuing discharge of contaminants via surface

waters onto Plaintiffs' land which occurs to this day, and that Defendants have breached a legal duty in failing to take action to remedy the condition.

(Plaintiffs' Brief in Opposition, Doc. # 65, pp. 34–35).

In response, the Defendants stress that the Plaintiffs admit that the last possible date for disposal of waste at the site would have been in 1979. This, Defendants maintain, caused a permanent effect on the land and is a crucial distinction explained by the Restatement (Second) of Torts, § 162, comment (e) which states:

A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land. Thus, if one, without a privilege to do so, enters the land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since this conduct has once and for all produced permanent injury to the land, the possessor's right is to full redress in a single action for trespass, and a subsequent transfer of the land, as such, acquires no cause of action for the alteration of the condition of land.

Thus, the Defendants maintain that the activities or trespass allegedly had permanently contaminated the land which is more in the nature of a permanent trespass rather than a continuing one. Defendants argue that the Statute of Limitations runs from the time it first occurred, or at least from the date it should have reasonably been discovered—in this case, 1979, when Plaintiffs admit that they discovered the illegal actions.[5]

Additionally, the Generator Defendants state that for a continuing tort to arise, the harm must arise from the continuous actions of the Defendant; not a continuous result from actions which have ceased.

■ The Court's review of the arguments demonstrates that the main issue herein revolves around whether the injury in this case was of a permanent nature, or conversely, one which can be characterized as separate and recurrent injuries so as to support the Plaintiffs' continuing tort theory. Generally, in case where all damages, both past and future, can be presently estimated and recovered in one action, successive actions cannot be brought for recurring or continuing damages and the Statute runs from the time the original cause of action accrues. In that regard, the Court in *Sustrik, Appellant v. J. & L. Steel Corp.*, 413 Pa. 324, 326, 197 A.2d 44 (1974) stated:

... a continuing trespass must be distinguished from a trespass that effects a permanent change on the condition of the land. The latter, while resulting in a continuing harm, does not subject the trespasser to liability for a continuing trespass. If a nuisance at the time of creation is a permanent one, the consequences of which in the normal course of things will continue indefinitely, there can be but a single action therefor to recover past and future damages and the statute of limitations runs against such cause of action from the time it first occurred, or at least from the date it should reasonably have been discovered."

*See also In Re Condemnation of Land in Damascus Tp.*, 83 Pa.Cmwlth. 76, 476 A.2d 489 (1984).

■ Conversely, where the damages resulting from an act are continuing or recurring so that they cannot presently be ascertained or estimated to bring in a single

---

**5.** The Defendants also argue that the case of *Ross v. Johns-Manville Corp.*, 766 F.2d 823, 827 (3d Cir.1985), stands for the proposition that the continuing tort theory is not the law of Pennsylvania. That opinions holding, however, appears limited to the fact that Pennsylvania treats all injuries arising out of the same tortious asbestos exposure as a single cause of action. While the case may support Defendants' argument that the activities complained of herein does not constitute recurrent activities or injuries, the court finds that the case is not dispositive on that issue, nor is it dispositive on the vitality of the continuing tort doctrine in Pennsylvania.

action, then separate and successive actions may be brought to recover the damages as they occur. In those cases, the action accrues for the purposes of the limitation period from the date of each injury and the Plaintiff is not barred of a recovery for such damages as have accrued within the statutory period before the filing of the action. Therefore, an action may lie for an injury recurring within the limitations period, even though the first tortious act came well before that period and is barred. Thus, the recovery is limited to such damages as accrued within the statutory period before the action.

The issue of whether an injury is permanent is not easily resolved. Courts have indicated that in cases where structures or other objects constitute a nuisance, the injury may be permanent if the nuisance may not be readily remedied, removed, or abated at a reasonable expense. On the other hand, injury causing structures that can be changed or repaired at a reasonable expense have been found to be of a temporary nature which may allow for a continuing tort theory.

Other rulings regarding the continuing tort theory seem to run the full spectrum. For instance, it has been held that successive actions for damages caused by a tort can be maintained only where the Defendant is continually in fault. *See Baker v. F & F Investments,* 420 F.2d 1191 (7th Cir. 1970) (the court stated that the touchstone of a Court's inquiry must be the nature and extent of the Defendant's behavior, not the duration of the Plaintiff's injury). Other Courts have found that an individual may not be charged as a continuing wrongdoer unless he has the rights and is under a duty to terminate the cause of injury. This proposition seems at odds with a particular Restatement (Second) of Torts, § 161, comment (c) which states in part:

> *Effect of actor's inability to remove the thing.* Since the conduct of the actor in placing the thing on the land is tortious, his responsibility for its presence on the land continues ... although through subsequent conduct on his part it has now become impossible or impracticable for him to terminate the intrusion on the other's land ... .

Additionally, some courts consider the legality of the structure before finding permanence. Thus, in a situations where a nuisance or trespass may be legally abated, at least one court has stated that it can be said to be a continuing nuisance within the rules by which successive actions may be brought for the resulting damage as they, occur, and a recovery may be had for all such damages as have accrued within the statutory period before the action. *See Reynolds Metal Company v. Yturbide,* 258 F.2d 321 (9th Cir.1958); *Signal Mountain Portland Cement Co. v. Brown,* 141 F.2d 471 (6th Cir.); *Daigle v. Continental Oil Company,* 277 F.Supp. 875 (W.D.La. 1967).

 In light of the above, the Court finds that discovery in this matter would be essential before a proper decision could be made on the issue of whether the actions of Defendants can be said to constitute a continuing tort. It is clear that the Plaintiffs have adequately pleaded claims which can be characterized as continuing and recurring. Whether Plaintiffs can sustain these allegations remains to be seen. However, before a proper decision may be rendered on any future summary judgment motion, certain factual issues need to be addressed, *inter alia:* the degree of control the defendant exerted over the property; the continuance of fault on the part of the defendants; the nature of the defendants activities occurring after 1979; whether the defendants were aware of the true nature of haulers' and owners' activities; the degree of control the defendants had over those parties and their legal relationship; and the nature and properties of the toxic substances buried at the site. Each of these inquiries may help provide a compass for a proper judgment. Moreover, it is clear from above that there is a wide divergence among the courts as to the proper legal standards and there appears little in Pennsylvania law to guide the Court. Therefore, further briefing will be required of the parties on any future motion for summary judgment.

An Order consistent with the foregoing memorandum follows.